IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JIMMY NELSON O/B/O                                              PLAINTIFF
T.N.

      v.                          CIVIL NO. 13-5265

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jimmy Nelson, brings this action on behalf of his minor daughter, T.N., seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying T.N.'s application for child's supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background**

Plaintiff protectively filed an application for SSI on T.N.'s behalf on November 30, 2010, alleging that T.N. was disabled since February 1, 2007, due to diabetes, thyroid problems, and asthma. (Tr. 15, 132). An administrative hearing was held on June 7, 2012, at which Plaintiff testified and was represented by counsel. (Tr. 33-55). By a written decision dated August 10, 2010, the ALJ found T.N.'s insulin dependant diabetes mellitus and asthma were severe impairments. (Tr. 18). The ALJ, however, found that T.N. did not have an impairment or combination of impairments medically or functionally equal to a listed impairment, and that T.N. was not disabled. (Tr. 18-28).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on September 18, 2013. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is ready for decision. (Doc. 12, Doc. 13).

**II. Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

The regulations prescribe a three-step process for making the disability determination. First, the ALJ must determine whether the child has engaged in substantial gainful activity. See 20 C.F.R. 416.924(b). Second, the ALJ must determine whether the child has a severe impairment or combination of impairments. See 20 C.F.R. 416.924(c). Third, the ALJ must determine whether the

severe impairment(s) meets, medically equals, or functionally equals a listed impairment. See 20 C.F.R. § 416.924(d).

Functional equivalence may be established by demonstrating marked limitations in two, or an extreme limitation in one of the following domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. See 20 C.F.R. § § 416.926(b)(1), 416.926a(d). SSR 09-1p explains that the Commissioner evaluates the "whole child" in making a functional equivalence finding. A marked limitation in a domain is an impairment that seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An extreme limitation very seriously interferes with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). The ALJ should consider all relevant evidence to determine whether a child is disabled, and the evidence may come from acceptable medical sources and from a wide variety of other sources. SSR 09-2P. The Commissioner's regulations provide that parents and teachers, as well as medical providers, are important sources of information. 20 C.F.R. § 416.924.

**III. Discussion:**

Plaintiff argues on appeal the ALJ erred by (1) failing to find T.N.'s hypothyroidism, enuresis, and patent foramen ovale ("PFO") were severe impairments, and (2) failing to find T.N. met the severity of a listed impairment. (Doc. 12 at 13).

**A. Severe Impairments**

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). An impairment is severe within the meaning

of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989).

The ALJ addressed all of T.N.'s impairments in the written decision and evaluated her thyroid condition, enuresis, and PFO, but found these conditions were not severe impairments. (Tr. 18-21).

Plaintiff did not list enuresis or PFO as a basis for disability on the application. Plaintiff also did not discuss T.N.'s hypothyroidism, enuresis, and PFO at the hearing. The failure to list these conditions as a basis for disability or discuss the conditions at the hearing tends to indicate the conditions were not severe. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); see also Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)(stating an ALJ is under no obligation to investigate a claim neither presented at the time of the application for benefits nor offered at the hearing).

The record reflects T.N.'s hypothyroidism and enuresis were controlled by treatment. (Tr. 288-291, 320-321, 351). In February 2010, Dr. Deborah Hays, one of T.N.'s treating physicians, documented T.N.'s hypothyroidism was controlled and her urinary problems were not serious. (Tr. 263). Although T.N. had new urinary problems later in the year, they were resolved with pull-ups and medications, and the only urinary problems reported after 2010 were related to a urinary tract infection. (Tr. 321, 373-375).

Plaintiff reported to physicians in April 2010 that T.N.'s only medical conditions were diabetes, hypothyroidism, and asthma, and stated that he considered T.N. to be in good health. (Tr. 300, 304). Although T.N.'s PFO was discovered after an echocardiogram in October 2010, Dr. Hays described it as a birth defect affecting about 30 percent of people and opined it was only a condition to monitor. (Tr. 281-285). There is no evidence indicating T.N. suffered an impairment from PFO.[1]

Accordingly, the ALJ's Step Two determination was based on substantial evidence.

**B. Domains of Functioning**

The Court next addresses whether T.N.'s impairments are functionally equal to any listed impairment, or, in other words, whether "what [T.N.] cannot do because of [her] impairments . . . is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria." 20 C.F.R. § 416.926a.

Plaintiff argues the ALJ should have found T.N. had a marked limitation in caring for herself and an extreme limitation in health and well-being, and therefore, her impairments functionally equaled an impairment listing. (Doc. 12 at 16).

The record shows T.N. struggled with controlling her diabetes, in part, because of late night snacking and non-compliance with her treatment. (Tr. 267-269). In January 2010, T.N. was admitted to the hospital for diabetic ketoacidosis. (Tr. 265-266). Immediately following her discharge, T.N.'s physician, Dr. Adam Mass, switched her treatment from an insulin pump therapy to an insulin

---

[1] The Court notes Plaintiff's brief spends a significant amount of time arguing the ALJ's decision conflicts with the State's non-examining physicians's opinions on T.N.'s severe impairments. (Doc. 12 at 14-16). A review of the physicians's reports shows the State's physicians listed PFO, hypothyroidism, and enuresis as impairments, but did not opine these impairments were severe. (Tr. 433, 466).

injection treatment because her pump treatment was ineffective and she did not have "significant helpful parental assistance in managing her diabetes." (Tr. 266). At a February 2010 followup, Dr. Mass noted T.N.'s diabetes was still poorly controlled, but indicated her condition was improving and noted she was "playing at recess after lunch on a daily basis." (Tr. 263-264). Records from a follow up in January 2011 showed T.N.'s diabetes was controlled while she was at school, although she was non-compliant while she was at home, and her injection treatment had resolved her previously recurrent diabetic ketoacidosis episodes. (Tr. 443). Although T.N. continued to struggle with her diabetes, Dr. Mass indicated in the most recent treatment notes from December 2011 and February 2012 that T.N.'s diabetes was managed by multiple daily injections. (Tr. 533, 537). Plaintiff discontinued T.N.'s treatment with Dr. Mass in April 2012 after some tension due to Plaintiff adjusting T.N.'s insulin doses himself and generally not following recommendations. (Tr. 542). Test results in May 2012, however, showed T.N.'s A1C result was an 8.9, which was a significant reduction from previous tests. (Tr. 50-51, 512).

      Plaintiff completed a Function Report for T.N. on November 30, 2010, indicating T.N. had very few limitations. Her only restrictions, according to Plaintiff, were difficulties writing longhand, difficulties playing team sports, and that "she misses school a lot of school due to the diabetes ... if her blood sugar is too high or too low, she gets sent home." (Tr. 122-127). Plaintiff submitted an updated Function Report on May 17, 2011, that was consistent with the first. (Tr. 152-157). Plaintiff indicated on both Function Reports that T.N. had no limitation in her ability to help herself or cooperate with others in taking care of her personal needs, no issues communicating with others, and no learning limitations. (Tr. 126-128, 152-155).

In addition to seeing Dr. Mass, T.N. was treated by Dr. Hays for enuresis, rash, UTI, and candiosis vulva between April and January 2011. (Tr. 281-295, 312, 369, 373-375 408-409). Dr. Hays submitted a Medical and Functional Capacity Assessment dated September 22, 2011, in which she opined T.N. had a marked impairment in caring for herself and an extreme impairment in her health and physical well-being. (Tr. 475-479).

T.N.'s teacher and counselor jointly submitted a Teacher Questionnaire dated December 12, 2010, and opined T.N. had a slight or no problem in all areas, did not have an unusual degree of absenteeism or miss school frequently due to illness, and that she "had no problems caring for herself." (Tr. 322-329).

The record, in relevant part, also shows T.N. was seen by a State psychiatrist, Dr. Scott McCarty, on March 16, 2011, who opined T.N. had no mental issues or learning disabilities. (Tr. 426-428). Additionally, Dr. William Collie, a State non-examining physician, completed a Childhood Disability Evaluation on March 23, 2011, and opined T.N.'s conditions did not meet a Listing, that she had no limitation in caring for herself, but had a marked limitation in her health and physical well-being due to her diabetes, multiple episodes of vulvar yeast infections, and lack of parental involvement in diabetes management. (Tr. 433-438). Dr. Susan Manley, a State non-examining physician, also completed a Childhood Disability Evaluation on June 2, 2011, and opined T.N. did not meet a Listing, had no limitation in caring for herself, and had less than a marked limitation in her health and physical well-being. (Tr. 466-471). Dr. Manley's more positive opinion reflected an improvement in T.N.'s blood sugar tests and the resolution of her rash and infections. (Tr. 469).

### 1. Acquiring and Using Information

The ALJ found T.N. had no limitation in this domain. (Tr. 23-24). The ALJ highlighted T.N.'s school records, which showed she was doing well in school, achieving high grades, and performing above average on standardized tests. (Tr. 24). The ALJ also gave significant weight to the opinions of T.N.'s teachers, who opined T.N.'s only difficulty in school was an occasional need for one-on-one assistance with math, and Plaintiff's Function Reports, who stated T.N. did not have any difficulty in this domain. (Tr. 24, 123, 151, 323).

In further support of his finding, the ALJ also noted the State's non-examining medical consultants, Dr. Manley and Dr. Collie, opined T.N. had no limitation in this domain. (Tr. 435, 468).

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that T.N. had no limitation in acquiring and using information.

### 2. Attending and Completing Tasks:

The ALJ found T.N. had no limitations in this domain. (Tr. 24). The ALJ gave great weight to the opinion of T.N.'s teachers, the Function Report submitted by Plaintiff, and the unanimous medical opinions that T.N. had no limitations in this domain. (Tr. 24, 324, 435, 468, 477). As the ALJ noted, T.N.'s teachers observed that T.N. had no problems attending or completing tasks, and Plaintiff reported T.N. did not have any problems paying attention or sticking with a task. (Tr. 127, 324).

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that T.N. had no limitation in attending and completing tasks.

### 3. Interacting and Relating with Others

The ALJ found T.N. had no limitation in this domain. (Tr. 25). The ALJ acknowledged T.N. had a few episodes of misbehavior at school, but concluded the incidents were isolated and not representative of her ability to interact and relate with others. The ALJ gave great weight to the opinions of T.N.'s teachers, who indicated she had no serious problems getting along with other children or respecting authority, and Plaintiff's reports that T.N. did not have any difficulties interacting with others, except a limited ability to play team sports. (Tr. 25, 125, 153, 325).

The record also showed that all of the medical experts were in agreement that T.N. had no limitation in this area, and that T.N.'s behavioral counselors reported her strengths included the "ability to form and maintain positive relationships." (Tr. 252, 435, 468, 478).

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that T.N. had no limitation in interacting and relating with others.

### 4. Moving About and Manipulating Objects

The ALJ found T.N. had no limitation in this domain. (Tr. 25-26). The ALJ gave great weight to Plaintiff's report that T.N. had no limitation in this area, other than some difficulty playing basketball, and gave significant weight to the opinions of T.N.'s physicians and teachers, who believed she had no limitations in this area. (Tr. 25, 326, 478). The State's consulting physicians also opined T.N. had no limitation in this domain. (Tr. 436, 469).

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that T.N. had no limitation in moving about and manipulating objects.

### 5. Domain of Caring For Self

The domain of caring for yourself considers how well a child can maintain her emotional and physical health, including the ability to fulfill wants and needs, cope with stress and change, and care for her own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The ALJ found T.N. had no limitation in her ability to care for herself. (Tr. 27).

The only evidence indicating T.N. had a limited ability to care for herself was a checklist questionnaire submitted by Dr. Hays, which the ALJ discounted for appropriate reasons. (Tr. 22, 27, 478). The ALJ specifically discounted Dr. Hays's opinion because there was no indication of a limitation in Dr. Hays's treatment notes; T.N.'s father and teachers indicated she had no limitations in caring for herself; and Dr. Hays's opinion conflicted with uncontroverted evidence that T.N. was capable of managing her diabetes by checking her blood sugar and giving herself injections. (Tr. 22, 27).

A treating physician's opinion will typically be given controlling weight when the opinion is well-supported and is not inconsistent with the record, but a treating physician's opinion does "not automatically control, since the record must be evaluated as a whole." Prosch v. Apfel, 201 F.3d 1010, 1012-1013 (8th Cir. 2000). Opinions of treating physicians may be discounted or disregarded "where other medical assessments are supported by better or more thorough medical evidence." Id. (quoting Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997)). Whatever weight the ALJ accords the treating physician's report, the ALJ is required to give good reasons for the weighting. See Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001).

Here, Dr. Hays's opinion was not supported by the record. Although Dr. Hays's opinion was generally consistent with her treatment notes from 2010, the opinion appeared to overstate T.N.'s

present limitations and did not reflect that T.N.'s infections and urinary problems had improved. As the ALJ noted, Dr. Hays's opinion was also contradicted by T.N.'s teacher and counselor's opinions, her father's reports, and the record as a whole. (Tr. 27). The Court also notes Dr. Hays treated T.N. for only a limited time period and for relatively minor conditions that were resolved, and her opinion was offered in a checklist format without any analysis about the basis of her opinion. See Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when it consists of nothing more than vague, conclusory statements"). It was permissible for the ALJ to discount Dr. Hays's opinion based on the reasons the ALJ identified.

The record as a whole shows T.N. was capable of taking care of herself. Dr. Collie and Dr. Manley opined T.N. had no limitations in this area. (Tr. 436, 469). Plaintiff indicated on the Function Reports that T.N. had no limitation in her ability to help herself or cooperate with others in taking care of her personal needs. (Tr. 126, 152). Plaintiff similarly stated to Dr. Scott McCarty, a State examining psychiatrist, that T.N. had "no problems communicating, understanding, walking, bathing, feeding, playing, or going to school." (Tr. 300, 428). T.N.'s teacher and counselor opined she "had no problems caring for herself." (Tr. 322-329).

Accordingly, the ALJ's finding was based on substantial evidence.

### 6. Domain of Health and Physical Well-Being

The health and physical well-being domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect a child's health and sense of physical well-being. 20 C.F.R. 416.929a.

The ALJ found T.N. had a marked limitation in this domain "due to her diabetes and asthma, [but] she is functioning well when compliant with [her] medication and treatment regimen." (Tr. 28). Plaintiff argues the ALJ should have determined T.N. had an extreme limitation in this domain due to Dr. Hays's opinion, her absenteeism, and rapidly fluctuating blood sugars. (Doc. 12 at 19-20).

As discussed above, the ALJ appropriately discounted Dr. Hays's opinion based on her treatment relationship, the improvement in T.N.'s conditions, and the record as a whole. The record shows T.N.'s blood sugar levels had improved by 2012. As for T.N.'s attendance and school performance, school records show her absenteeism was declining each year, she scored proficient on standardized tests, and she made A's and B's on her most recent semester report card. (Tr. 185-186, 190, 193, 512). T.N.'s teacher and counselor also opined she did not frequently miss school due to illness and did not have an unusual degree of absenteeism. (Tr. 322, 328).

An extreme limitation requires a very serious interference on a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). The record as a whole does not demonstrate T.N. had an extreme limitation. Her grades were adequate and she was missing fewer days from school, her minor health conditions had improved, and the switch from an insulin pump therapy to an injection treatment appeared to be controlling her diabetes so long as she was compliant with her treatment.

Accordingly, Court finds substantial evidence supports the ALJ's finding of a marked limitation in the domain of health and physical well-being.

**IV. Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's complaint should be dismissed with prejudice.

Dated this 12th day of March, 2015.

*s/ Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE